**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DIEDRE L. CREECH,<br><br>             Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of the Social<br>Security Administration,<br><br>           Defendant. | No. CV ED13-1292 SS<br><br><br>**MEMORANDUM DECISION AND ORDER** |

**I.**

**INTRODUCTION**

Diedre Creech ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner" or the "Agency") denying her Disability Insurance Benefits and Supplemental Security Income. The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the decision of the Commissioner is AFFIRMED.

**II.**

**PROCEDURAL HISTORY**

Plaintiff Diedre Creech filed applications for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI") on July 20, 2006. (AR 97). In both applications, Plaintiff alleged a disability onset date of November 2, 2002. (Id.). The Agency denied Plaintiff's applications on July 20, 2006, and upon reconsideration on March 5, 2007. (Id.). On May 9, 2007, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Id.). Plaintiff appeared and testified at a hearing held before ALJ Keith Varni on May 9, 2008. (Id.). On June 13, 2008, the ALJ issued a decision denying Plaintiff DIB and SSI. (AR 102).

\\

\\

Plaintiff requested review of the ALJ's decision on July 1, 2008. (AR 137). On June 4, 2010, the Appeals Council remanded the case for further proceedings on the issue of disability prior to July 8, 2008. (AR 105). On remand, on March 4, 2011, ALJ Michael D. Radensky affirmed the previous ALJ's decision denying benefits. (AR 36). The Appeals Council affirmed the ALJ's decision on September 21, 2012, but found that Plaintiff was disabled beginning on July 8, 2008. (AR 6-9). Plaintiff filed the instant action on July 23, 2013.

### III.
#### FACTUAL BACKGROUND

Plaintiff was born on September 11, 1958. (AR 90). She was forty-four years old as of the alleged disability onset date and fifty-three years old at the time of her most recent hearing before the ALJ. (AR 32, 41). Plaintiff reached eleventh grade of high school. (AR 49). Plaintiff alleges that she was unable to engage in substantial gainful activity after November 2, 2002, because of pain in her ankles and feet. (AR 56-58). Plaintiff sought treatment for her condition beginning in August 2002. She also sporadically sought treatment via emergency room visits beginning in August 2005. (AR 34).

\\
\\
\\
\\
\\

**A.    Medical History and Treating Doctors' Opinions**

**1.    Physical Condition**

In August 2002, Plaintiff complained of left ankle pain.[1] (AR 51).  In December 2002, Plaintiff again complained of left ankle pain.  (Id.).  On January 8, 2003, Plaintiff visited Riverside County Regional Medical Center seeking treatment for a right ankle sprain and left ankle collapse.  (AR 51, 322).  A resident under Dr. Baum's supervision examined Plaintiff, and an x-ray showed that Plaintiff's left ankle was normal at the time of her visit.  (AR 322).  The x-ray showed "no evidence of fracture, dislocation or localized bone destruction."  (Id.).  On February 5, 2003, Plaintiff again visited Riverside County Regional Medical Center seeking treatment for left ankle pain.  (AR 51-52, 321).  Again, x-ray results revealed no abnormalities with respect to her left ankle.  (AR 321).  Dr. Baum directly treated Plaintiff on this visit.  (Id.).

On April 2, 2003, Plaintiff visited Riverside County Regional Medical Center complaining of sprains in both ankles.  (AR 319).  An MRI of Plaintiff's left ankle showed intact tendons and fluid buildup "probably related to tendinitis."  (Id.).  Nevertheless, a clinician under the care of Dr. Baum recommended

---

[1] This fact is taken from the testimony of non-examining medical expert Dr. Lorber.  He is referring to Dr. Lizarraras' medical evaluation for the Agency.  The evaluation does not state the location where Plaintiff was treated or the doctor who treated Plaintiff on this date.  (AR 275).

1  surgery to explore Plaintiff's tendons and an ostectomy of a
2  spur.  (AR 52).  Plaintiff was advised to return to the
3  orthopedic clinic when the proposed surgical procedure was
4  approved.  (Id.).  However, Plaintiff asserted she never
5  underwent the surgical procedure because she did not have
6  insurance and could not afford the procedure.  (AR 57).  The
7  record is unclear as to whether the procedure was ever approved.
8  Plaintiff obtained another MRI of her left foot on December 6,
9  2005, which revealed a stress fracture of the head of the fifth
10 metarsal or a possible focal contusion.  (AR 52, 331).

12     From August 2005 to November 2009, Plaintiff visited the
13 emergency room multiple times.  (AR 53).  On August 5, 2005,
14 Plaintiff visited Inland Valley Hospital due to chest pain and a
15 left ankle injury.  (AR 266-268).  Dr. Zaludek examined
16 Plaintiff.  (Id.).  An x-ray obtained of her left ankle was
17 negative.  (AR 53, 256).  On June 5, 2006, Plaintiff twisted her
18 right ankle and again visited Inland Valley Hospital.  (AR 53).
19 Dr. Fletcher examined Plaintiff.  (AR 351-352).  A clinical exam
20 revealed swelling about the fifth metarsal base, which appeared
21 to be present for a "long time."  (AR 53).  On May 28, 2009,
22 Plaintiff visited the emergency room at Menifee Valley Medical
23 Center.  (AR 380).  Plaintiff complained of ankle swelling due to
24 an apparent twisted ankle.  (AR 34-35).  During the visit,
25 Plaintiff reported that she was in overall excellent health.  (AR
26 35).  During her May 28, 2009 emergency room visit, Plaintiff
27 received an Ace wrap and crutches to treat her ankle injury.  (AR
28 35).  Finally, Plaintiff traveled to Menifee Valley Medical

Center on November 30, 2009.  (AR 375).  The emergency report states that "[Plaintiff] was obviously intoxicated."  (Id.). Plaintiff claimed that she fell and "complain[ed] of pain to her right foot and ankle."  (Id.).  However, Plaintiff was unable to explain how she allegedly fell.  (Id.).  Plaintiff was diagnosed with an ankle sprain and alcohol intoxication, and was discharged in stable condition.  (Id.).

### 2.   Mental Condition

On January 31, 2009, Plaintiff visited Menifee Valley Medical Center after a suicide attempt.  (AR 384).  Plaintiff's blood alcohol content level was .261 at the time of her admission to the medical center.  (AR 385).  Dr. Williams, who initially examined Plaintiff, transferred Plaintiff to Dr. Mener, another emergency room specialist.  (AR 385, 387).  Dr. Menener diagnosed Plaintiff with suicidal ideations.  (AR 387).

### B.   Doctors' Opinions Regarding Plaintiff's Physical Condition

### 1.   Dr. A.W. Lizarraras

On September 19, 2006, at the request of the Agency, Dr. A.W. Lizarraras completed a medical evaluation based on a review of Plaintiff's medical records.  (AR 35, 275-76).  Dr. Lizarraras detailed Plaintiff's medical history from August 2002 to August 2006.  (AR 275-76).  Dr. Lizarraras noted that Plaintiff's left ankle had been episodically symptomatic since 2002.  (AR 276).

1    Dr. Lizarraras also noted that initial x-rays were normal, but a
2    more recent x-ray from August 2006 suggested a medial malleoulus
3    fracture that was expected to heal with appropriate treatment.
4    (Id.).   Dr. Lizarraras concluded that Plaintiff's left ankle
5    problem was non-severe per SSR 96-7p.[2]   (Id.).

7        **2.   Dr. F. Kalmar**

9        On February 27, 2007, at the request of the Agency, Dr. F.
10   Kalmar completed a medical evaluation based on his review of
11   Plaintiff's medical records.  (AR 35, 365).  Dr. Kalmar affirmed
12   Dr. Lizarraras' findings.  (Id.).  However, Dr. Kalmar noted that
13   there appeared to be insufficient information prior to June 30,
14   2004, to evaluate the severity of the Title II claim.  (AR 365).

16       **3.   Dr. Lorber**

18       After reviewing the record and being present for Plaintiff's
19   testimony before the ALJ, non-examining physician Dr. Arthur
20   Lorber testified as a Medical Expert ("ME") before the ALJ
21   concerning Plaintiff's physical condition.  (AR 41).  Dr. Lorber
22   concluded that the medical evidence regarding Plaintiff's
23   allegedly disabling physical conditions was "minimal to equivocal
24   at best."  (AR 54).  Dr. Lorber emphasized that Plaintiff had not
25   used an assistive device to walk, except for short periods of

---

27       [2]   Medical evidence, especially a longitudinal medical
28   record, can be extremely valuable in the adjudicator's evaluation
     of an individual's statements about pain or other symptoms.

7

1  time.  (Id.).   He  also  found  that  Plaintiff  experienced  no

2  durational  problem  because  her  pain  and  concerns  varied  from  one

3  part  of  the  foot  to  the  other.   (Id.).   Dr.  Lorber  opined  that

4  Plaintiff  was  not  restricted  to  a  sedentary  level  of  activities.

5  (Id.).   Furthermore,  he  determined  that  Plaintiff  could  walk  or

6  stand  for  "a  period  much  greater  than  two  hours  per  day."   (Id.).

7  In  conclusion,  Dr.  Lorber  did  not  put  "any  limitations  on

8  [Plaintiff's]  ability  to  stand  and  walk"  during  the  period  in

9  question.   (Id.).

10

11  C.   **Vocational Expert Testimony**

12

13      Vocational  Expert  ("VE")  David  Rinehart  testified  at

14  Plaintiff's  hearing  regarding  the  existence  of  jobs  in  the

15  national  economy  that  Plaintiff  could  perform  given  her  physical

16  and  mental  limitations.   (AR 69-74).   After  confirming  that  the

17  VE  reviewed  the  exhibits  provided  to  him  in  connection  with  this

18  case  and  was  present  for  Plaintiff's  testimony  before  the  ALJ,

19  the  ALJ  asked  the  VE  to  consider  an  individual  with  Plaintiff's

20  age,  education,  work  experience  and  physical  and  mental

21  limitations.   The  VE  testified  that  an  individual  sharing

22  Plaintiff's  age,  education,  experience  and  mental  and  physical

23  limitations  would  be  able  to  perform  work  as  a  certified  nurse's

24  assistant  at  the  medium  level  of  physical  exertion,  a  home

25  attendant  at  the  medium  level  of  physical  exertion  and  an

26  assembler  for  medical  devices  at  the  light  level  of  physical

27  exertion.   (AR 72).   The  VE  opined  that  these  jobs  existed  in

28  significant  numbers  in  the  national  economy  and  local  economy,

1    and he provided specific job numbers for each occupation.  (AR
2    73-74).

3

4         The ALJ then posed hypotheticals to the VE.  First, the ALJ
5    asked the VE if Plaintiff could perform her past work if she was
6    limited to medium work.  (AR 73).  The VE responded that such a
7    person would be able to perform all past work except as nurse's
8    assistant as actually performed in the past.[3]  (Id.).  Then the
9    ALJ asked what work Plaintiff could perform if she was limited to
10   light work.  (Id.).  The VE testified that such a person would be
11   able to work as a medical device assembler or home attendant as
12   actually performed in the past.  (Id.).  Furthermore, the ALJ
13   asked what work Plaintiff could perform if she was limited to
14   light work and could stand and walk for only two hours in an
15   eight hour day.  (Id.).  The VE responded that such a person
16   could not perform her past work.  (Id.).  Finally, the ALJ asked
17   what work Plaintiff could perform if she were to be off task a
18   cumulative total of approximately a third of the day due to
19   bilateral ankle pain.  (AR 74).  The VE testified that this
20   hypothetical would eliminate all the jobs identified.  (Id.).

21

22

23   _____

24        [3]  As discussed below, the ALJ found that Plaintiff was
     previously employed as a home attendant and medical device
25   assembler.  (AR 35,69-71).  Plaintiff's home attendant job duties
     consisted of lifting an elderly man off his bed and couch,
26   bathing him, cooking, cleaning, doing laundry and administering
     medication.  (AR 34).  Plaintiff subsequently performed the same
27   care for her disabled nephew.  (AR 44-45).  However, the record
     indicates that assisting her nephew was less physically demanding
28   than assisting the elderly man.  (AR 34, 45, 66).

D.    **Plaintiff's Testimony**

Plaintiff testified that she could not engage in substantial gainful employment because of chronic pain in her feet and ankles. (AR 58). There was no specific accident that caused the pain. Instead, Plaintiff attributed the pain to "wear and tear" and cited her club foot as a contributing factor. (Id.). Plaintiff asserted that she had not been symptom free anytime from 2002 to 2007. (AR 62). Plaintiff explained that although the pain started in her left foot and ankle, her right foot and ankle chronically hurt due to right foot overcompensation. (AR 56). Plaintiff testified that she was pain free only when there was no pressure on her feet. (AR 55). Plaintiff also asserted that standing up was painful and that she had difficulty lifting "anything." (AR 55, 62). Plaintiff also vaguely testified that she experienced difficulty lifting objects. (AR 55). Plaintiff testified her feet felt "weak" and walking for a period of time led to "excruciating" pain. (AR 58). Plaintiff explained that she could not walk a block at a reasonable pace on an uneven or rough surface. (AR 61). Furthermore, sitting was painful because there was still some pressure on her feet. (AR 33, 55, 63). Plaintiff explained that she was most comfortable when lying down with her feet elevated. (AR 63).

During the five year period for which Plaintiff seeks SSI and DIB, Plaintiff used crutches and splints intermittently. (AR 59-60). Plaintiff claimed that, as of February 11, 2011, she had been alcohol free for more than a year. (AR 48). Plaintiff

testified that she never underwent surgery on her ankles because she did not have insurance and could not afford the procedures. (AR 57). To manage her pain, Plaintiff took Motrin. (AR 61).

## IV.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

> (1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> (2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to

step three.

(3)   Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)   Is the claimant capable of performing his past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)   Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54.  Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry.  Id. at 954.  If, at step four, the claimant meets her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20

1   C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  The Commissioner may do

2   so by the testimony of a vocational expert or by reference to the

3   Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404,

4   Subpart P, Appendix 2 (commonly known as "the Grids").  Osenbrock

5   v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant

6   has   both   exertional   (strength-related)   and   non-exertional

7   limitations, the Grids are inapplicable and the ALJ must take the

8   testimony of a vocational expert.  Moore v. Apfel, 216 F.3d 864,

9   869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335,

10  1340 (9th Cir. 1988)).

11

12                                  **V.**

13                          **THE ALJ'S DECISION**

14

15       The ALJ employed the five-step sequential evaluation process

16  and concluded that Plaintiff was not under a disability within

17  the meaning of the Social Security Act from November 2, 2002,

18  through the date of the ALJ's decision on March 4, 2011.  (AR

19  36).  At step one, the ALJ found that Plaintiff had not engaged

20  in substantial gainful employment since November 2, 2002.  (AR

21  32).  At step two, the ALJ found that Plaintiff had the severe

22  impairments of chronic bilateral ankle pain status post fractured

23  left ankle.  (Id.).  At step three, the ALJ found that Plaintiff

24  did not have an impairment or combination of impairments that met

25  or medically equaled one of the listed impairments in 20 C.F.R.

26  Part 404, Subpart P, Appendix 1. (AR 33).  The ALJ then found

27  that Plaintiff had the following RFC:

28

1       [Plaintiff] has the residual functional capacity to

2       perform the full range of light work as defined in 20

3       CFR 404.1567(b) and 416.967(b).

4

5 (Id.).  In making this finding, the ALJ first addressed the

6 disconnect between the alleged severity and frequency of

7 Plaintiff's symptoms and the evidence in the Administrative

8 Record.  To begin, the ALJ detailed Plaintiff's work history from

9 2005 to February 2010.  (AR 34).  The ALJ explained that the

10 Plaintiff worked during most of the period in question taking

11 care of an invalid elderly man.  (Id.).  This work consisted of

12 "helping him transfer, bathe, cook, clean, do laundry, and help

13 with medication."  (Id.).  The ALJ observed that the Plaintiff

14 "appeared to have no problem assisting the elderly man . . . ."

15 (Id.).  The ALJ also noted that Plaintiff had since performed

16 similar work for her disabled nephew, although this work was less

17 physically demanding than assisting the elderly man.  (Id.).

18

19    After his review of Plaintiff's past work, the ALJ addressed

20 Plaintiff's lack of medical evidence.  The ALJ emphasized that

21 "[m]ore recent radiographs showed some mild degeneration of the

22 ankles but nothing significant and no evidence of any fractures

23 other than a 5th metatarsal in the left foot, but that does not

24 impose any limitations."  (Id.).  Furthermore, the ALJ noted a

25 normal x-ray from April 23, 2003, and an MRI of the left ankle

26 which revealed intact tendons.  (Id.).  An August 5, 2005 x-ray

27 of Plaintiff's left foot was also negative.

28

The ALJ also addressed and appears to have given substantial weight to the testimony of non-examining ME Dr. Lorber, who testified regarding Plaintiff's physical condition. The ALJ noted based upon Dr. Lorber's testimony, that there was no MRI evidence of an abnormality, no mention of any assistive device, and that overall findings regarding pain about the left and right foot were minimal. (Id.). Finally, the ALJ concluded by emphasizing Dr. Lorber's diagnosis that Plaintiff experienced no limitations on her ability to stand or walk. (Id.).

Next, the ALJ discussed Plaintiff's emergency room visits. The ALJ noted that the Plaintiff was able to take a bus to the emergency room in June 2006 despite her alleged pain. (Id.). At Plaintiff's January 31, 2009 emergency room visit, Plaintiff had a blood alcohol content of .261. (Id.). During a subsequent emergency room visit on May 28, 2009, Plaintiff reported she was in "overall excellent" health. (AR 34-35). During her November 30, 2009 visit to the emergency room, Plaintiff was "obviously" intoxicated. (AR 35). The ALJ explained that during this final emergency room visit, Plaintiff denied having medical problems and denied being an alcoholic. (Id.).

Last, the ALJ addressed the opinions of Plaintiff's non-examining Agency physicians. The ALJ restated and agreed with Dr. Lizarraras' findings, including her conclusion that Plaintiff's left ankle problem and headaches were non-severe. (Id.). The ALJ also restated and agreed with Dr. Kalmar's affirmance of Dr. Lizarraras' findings. (Id.).

1    At step four, the ALJ determined that Plaintiff was capable
2    of performing past relevant work as a certified nurse assistant,
3    caregiver and medical device assembler.  (Id.).   The ALJ noted
4    "this work does not require the performance of work-related
5    activities precluded by the [Plaintiff's] residual functional
6    capacity (20 CFR 404.1565 and 416.965)."   (Id.).   Furthermore,
7    the ALJ explained that the Plaintiff could perform the job of
8    medical device assembler as actually and generally performed.
9    (Id.).   Finally, the ALJ concluded that the job of home attendant
10   and caregiver could be performed as the claimant actually
11   performed it.  (Id.).

12

13   Because Plaintiff was capable of performing her past work,
14   the ALJ was not required to proceed to step five.

15

16                              **VI.**

17                    **STANDARD OF REVIEW**

18

19   Under 42 U.S.C. § 405(g), a district court may review the
20   Commissioner's decision to deny benefits.   The court may set
21   aside the Commissioner's decision when the ALJ's findings are
22   based on legal error or are not supported by substantial evidence
23   in the record as a whole.   Aukland v. Massanari, 257 F.3d 1033,
24   1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen
25   v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v.
26   Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

27

28

                                16

1     "Substantial evidence is more than a scintilla, but less

2  than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson

3  v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant

4  evidence which a reasonable person might accept as adequate to

5  support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066;

6  Smolen, 80 F.3d at 1279). To determine whether substantial

7  evidence supports a finding, the court must "'consider the record

8  as a whole, weighing both evidence that supports and evidence

9  that detracts from the [Commissioner's] conclusion.'" Aukland,

10  257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th

11  Cir. 1993)). If the evidence can reasonably support either

12  affirming or reversing that conclusion, the court may not

13  substitute its judgment for that of the Commissioner. Reddick,

14  157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457

15  (9th Cir. 1995)).

16

17                               **VII.**

18                            **DISCUSSION**

19

20     Plaintiff challenges the ALJ's decision on one ground.

21  Plaintiff contends that the ALJ's credibility determination

22  lacked the support of substantial evidence. (Memorandum in

23  Support of Plaintiff's Complaint ("MSPC") at 4-9). According to

24  Plaintiff, the ALJ's rationale "lacks specificity or analysis."

25  (Id. at 8). However, Plaintiff offers only a conclusory analysis

26  explaining why the evidence the ALJ relied upon in reaching his

27  decision did not qualify as "substantial."

28

The Court disagrees with Plaintiff.  The ALJ not only cited clear and convincing reasons for rejecting Plaintiff's subjective testimony, but also based his decision on "substantial evidence." Accordingly, for the reasons discussed below, the Court finds that the ALJ's decision must be AFFIRMED.

**The ALJ Offered Clear And Convincing Reasons Supported By Substantial Evidence For Finding Plaintiff's Subjective Testimony Less Than Fully Credible.**

Plaintiff contends that the ALJ erred by failing to articulate clear and convincing reasons for finding Plaintiff's subjective testimony less than fully credible. (MSPC at 4).  The Court disagrees.  The ALJ's decision contains extensive citation to and discussion of clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's testimony.

When assessing the credibility of a claimant, the ALJ must engage in a two-step analysis.  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).  First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged.  (Id.).  Then, if there is, in order to reject the testimony, the ALJ must make specific credibility findings.  (Id.).  In assessing the claimant's testimony, the ALJ may use "ordinary techniques of credibility evaluation." Turner, 613 F.3d at 1224 (internal quotations omitted). The ALJ may also consider any inconsistencies in the claimant's conduct and any inadequately or unexplained failure to pursue treatment or follow

treatment.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).  Additionally, the ALJ may discredit the claimant's testimony where his normal activities can transfer to the work setting.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

Furthermore, as discussed *supra*, "[s]ubstantial evidence is more than a scintilla, but less than a preponderance." *Reddick*, 157 F.3d at 720 (citing *Jamerson*, 112 F.3d at 1066).  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Id.* (citing *Jamerson*, 112 F.3d at 1066; *Smolen*, 80 F.3d at 1279).

Here, there was medical evidence of an underlying impairment.  However, the ALJ articulated specific, clear and convincing reasons for discounting Plaintiff's testimony about the severity of her physical symptoms.

First, the ALJ cited Plaintiff's work assisting an elderly man as an indication that her testimony was unreliable.  The ALJ noted Plaintiff helped the man "transfer [out of bed and off his couch], bath, cook, clean, do laundry and help with medication." (AR 34).  The ALJ further emphasized that Plaintiff "appeared to have no problem assisting the elderly man with more physical care [than her subsequent work assisting her nephew.].  (*Id.*).

The Court agrees with the ALJ's finding that Plaintiff's work during the period in question renders her allegations of

chronic bilateral ankle pain questionable.  Were Plaintiff's symptoms as severe as she claimed, it seems unlikely that she would have been able to assist the elderly man in the manner described.  (AR 67).  These actions contradict Plaintiff's testimony in which she stated she "couldn't lift anything."  (AR 55).  Further, as a matter of law, the ALJ's reliance on and citation to Plaintiff's daily activities in evaluating Plaintiff's subjective testimony was proper.  See, e.g., Morgan, 169 F.3d at 600 (the ALJ may discredit the claimant's testimony where his normal activities can transfer to the work setting; Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (to determine whether the plaintiff's testimony regarding the severity of his symptoms is credible, the ALJ may consider the claimant's daily activities); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (daily activities may be reason to discredit excess pain allegation if claimant is able to spend a substantial part of the day performing activities that are transferable to a work setting).

Second, the ALJ cited Plaintiff's contradictory statements as a basis for doubting the credibility of her subjective testimony.  During Plaintiff's visit to the emergency room on May 28, 2009, she reported that she was in "overall excellent health."  (AR 34-35).  Similarly, during her November 30, 2009 visit to the emergency room Plaintiff denied having medical problems.  (AR 35).  Finally, Plaintiff was able to take a bus to the emergency room in June 2006.  (AR 34).  Therefore, she was ambulatory to the extent that she could walk to the bus stop and

get on and off the bus.  (AR 53).  Based on this inconsistent testimony, the ALJ properly concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity."  (AR 34); see Molina, 674 F.3d at 1112 ("In evaluating the claimant's testimony, the ALJ may use ordinary techniques of credibility evaluation[] . . . [and] . . . may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct[.]") (internal quotation marks omitted).

Third, the ALJ properly cited inconsistencies between Plaintiff's testimony and the objective medical evidence to discredit Plaintiff's subjective testimony.  (AR 34).  The Court notes it is improper for an ALJ to reject subjective testimony based "solely" on its inconsistencies with the objective medical evidence presented.  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (citing Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)).  However, an ALJ may consider such inconsistencies as one factor, among many, bearing on the credibility of a plaintiff's subjective testimony.  See, e.g., Thomas v. Barnhart, 278 F.3d 947, 958-60 (9th Cir. 2002) (ALJ properly considered the lack of objective medical evidence, as well as other factors, in evaluating the credibility of a plaintiff's subjective testimony regarding the severity of her impairments and pain); Morgan, 169 F.3d at 599-600 (same).

The ALJ noted numerous inconsistencies between Plaintiff's testimony and the objective medical evidence, which called into doubt the physical limitations that Plaintiff alleged. The ALJ explained that "[m]ore recent radiographs showed some mild degeneration of the ankles but nothing significant and no evidence of any fractures other than a 5th metatarsal in the left foot, but that does not impose any limitations." (AR 34). The ALJ further emphasized a normal x-ray from April 23, 2003, and an MRI of the left ankle which revealed intact tendons. (Id.) The ALJ also underscored that an August 5, 2005 x-ray of Plaintiff's left foot was negative (i.e., it showed no abnormalities). (Id.). Thus, Plaintiff failed to produce any x-ray or MRI revealing a significant abnormality in her ankles or feet. This objective medical evidence taken together with all the other reasons listed above, constitute clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's subjective testimony.

The ALJ relied on the opinions of ME Dr. Lorber and non-examining Agency physicians Drs. Lizarraras and Kalmar. In assessing credibility, the ALJ may examine testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. Thomas v. Barnhart, 278 F.3d 947, 958-99 (9th Cir. 2002). The ALJ largely deferred to Dr. Lorber's testimony. The ALJ first noted, as Dr. Lorber explained during the administrative hearing, that Plaintiff's medical evidence was minimal. (Id.). Furthermore, the ALJ noted that Dr. Lorber concluded that Plaintiff did not

have any limitations on her ability to stand or walk any limitations on her ability to stand or walk during the period in question. (Id.).

The ALJ also gave great weight to the opinions of Drs. Lizarraras and Kalmar. Dr. Lizarraras found that the "left ankle problem and headaches are non-severe [per SSR 96-7p]." (AR 35). Furthermore, Dr. Kalmar affirmed Dr. Lizarraras' findings. (Id.). These findings directly contradicted the Plaintiff's testimony, and Plaintiff has not offered any evidence contradicting the opinions of these doctors. This factor, in conjunction with others, militates in favor of doubting Plaintiff's subjective testimony.

In sum, the ALJ offered clear and convincing reasons supported by substantial evidence for finding Plaintiff's subjective testimony less than fully credible.

\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\

# VIII.

## CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner. The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.


DATED:  June 20, 2014                    _____/S/_____

                                         SUZANNE H. SEGAL
                                         UNITED STATES MAGISTRATE JUDGE




THIS DECISION IS NOT INTENDED FOR PUBLICATION IN LEXIS, WESTLAW OR OTHER LEGAL DATABASE.